IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BARRY LEE HOYT                                                      PLAINTIFF

v.                              Civil No. 06-5115

DR. NEIL MULLINS;
NURSE SUE McDONALD; and
CAPTAIN HUNTER PETRAY                                      DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro se and in forma pauperis.

The events at issue in this lawsuit occurred while the plaintiff was incarcerated at the Benton County Detention Center. Plaintiff contends his constitutional rights were violated when he was denied adequate medical care.

Defendants filed a summary judgment motion (Doc. 12). To assist plaintiff in responding to the summary judgment motion, a questionnaire was propounded (Doc. 16).

Plaintiff filed a timely response to the questionnaire (Doc. 17). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

### Background

Hoyt was arrested and booked into the Benton County Detention Center (BCDC) on December 14, 2004. *Plaintiff's Response* (*hereinafter Resp.*) (Doc. 17) at ¶ 1. He was booked on charges of assault upon a law enforcement officer, sexual assault, and failure to appear. *Id.*

-1-

at ¶ 2.  The pending criminal charges were the sole reason Hoyt was incarcerated.  *Resp.* at ¶ 3.


On December 14, 2004, a warrant had been issued for Hoyt's arrest on the charge of failure to appear.  *Resp.* at ¶ 5.  When Hoyt was booked in on December 14th, he was given a copy of the Benton County Inmate Rights and Detainee Rules.  *Id.* at ¶ 8.  Although a medical questionnaire was completed when Hoyt was booked in on December 14th which indicated Hoyt had no health problems and which appears to contain Hoyt's signature, *see defendants' exhibit* 2 at page 1, Hoyt contends he told the booking officer that he had both mental and physical problems requiring medical attention, *see resp.* at ¶ 9.

On December 16, 2004, Lt. Paul Carter submitted an affidavit of facts constituting probable cause for arrest.  *Id.* at ¶ 6.  The affidavit reflects that at or about 12:00 p.m. on December 14, 2004, Deputy Michael Houston was assaulted by Hoyt when Houston attempted to arrest Hoyt as ordered by the Benton County Circuit Court.  *Id.*  Specifically the probable cause affidavit stated Hoyt made a stabbing motion with an ink pen towards Houston's torso, swung at him with Hoyt's closed fists, and threatened to kill him if he arrested Hoyt.  *Id.* at ¶ 7.

On January 7, 2005, Hoyt was placed in administrative segregation after having problems with inmates in D-149.  *Resp.* at ¶ 10.  It was felt Hoyt should be in administrative segregation for his own safety.  *Id.*

On January 7th, Hoyt submitted a request stating that he would not fight.  *Resp.* at ¶ 11.  In response, Hoyt was told he would remain in administrative segregation.  *Id.*

-2-

On February 5th, Hoyt submitted a medical request for "anti-cream." *Resp.* at ¶ 12.  He was seen by Nurse McDonald on February 8th and given hydrocortisone cream to be applied to his heels for three nights.  *Id.* at ¶ 13(A).  He received the prescribed hydrocortisone cream.  *Id.* at ¶ 13(B).

On March 31st, Hoyt submitted a medical request asking to be checked for diabetes.  *Resp.* at ¶ 14.  He indicated that prior to his incarceration he had been a borderline diabetic.  *Id.*

Hoyt was seen by Nurse McDonald on April 1st.  *Resp.* at ¶ 15.  She noted Hoyt had no symptoms of diabetes.  *Defts' Ex.* 2 at page 21.  Nurse McDonald noted that Hoyt had "flat affect. Confusion noted on questioning.  Doesn't know what diabetes is as a disease." *Defts' Ex.* 2 at page 21.  Hoyt agrees he saw McDonald but indicates he doesn't know what she noted and states by definition she is not a doctor.  *Resp.* at ¶ 15 & ¶ 16.

On April 2nd, Hoyt was ordered to the back of his cell by Deputy Barrett and Deputy Buth, placed on the floor, handcuffed, and then escorted out of the pod.  *Defts' Ex.* 4 at page 2.  Hoyt was charged with disobeying the order of a deputy and given ten days lock-down with loss of privileges.  *Resp.* at ¶ 18.  Hoyt appealed and Lt. Carter affirmed the decision.  *Id.*

Hoyt brought a civil rights case contending the deputies had used excessive force against him on April 2, 2005, *Hoyt v. Buth*, civil no. 05-5079.  *Resp.* at ¶ 19.  Judgment was entered in the defendants' favor in that case.  *Id.*

On April 3rd, Hoyt submitted a request for medical attention stating he had been beaten and his head, foot, ear, and back were hurting.  *Resp.* at ¶ 20.  Hoyt was seen by Dr. Mullins on April 4th.  *Id.* at ¶ 21(A).  Dr. Mullins noted Hoyt reported being beaten by deputies but did not

-3-

give any details.  *Id.*  He noted that Hoyt had a small bruise on left third toe but it was not swollen and did not appear to have a fracture.  *Id.*  With respect to Hoyt's back examination, Dr. Mullins noted Hoyt's straight leg raising test was negative.  *Id.*  Dr. Mullins concluded Hoyt's back pain was questionable.  *Id.*  Dr. Mullins prescribed Ibuprofen 600 m.g., twice a day, for five days.  *Id.*  Hoyt received the prescribed Ibuprofen.  *Id.* at ¶ 21(B).

On April 12th, Hoyt submitted a medical request stating he was still hurting from being beaten.  *Resp.* at ¶ 22.  Hoyt stated he needed to see the doctor to get something for the pain.  *Id.*

Hoyt was seen by Dr. Mullins on April 14th and he prescribed Ibuprofen for five more days.  *Resp.* at ¶ 23(A).  Hoyt received the prescribed Ibuprofen.  *Id.* at ¶ 23(B).

On June 13th, Hoyt asked to see the doctor about his medication.  *Resp.* at ¶ 24.  Hoyt indicated Ozark Guidance Center (OGC) had been given him Strattera, Wellbutrin and Desatoin. *Id.*

Hoyt was seen by Dr. Mullins on June 14th.  *Resp.* at ¶ 25.  It is not clear what treatment Hoyt received from Dr. Mullins.  *Defts' Ex.* 2 at page 21; *Resp.* at ¶ 26(A).  From July 19th to August 15th Hoyt received the Strattera and Wellbutrin prescribed by a doctor at the OGC. *Resp.* at ¶ 26(B) & ¶ 26(C).  Dr. Huskins discontinued these medications.  *Id.* at ¶ 26(C).

Hoyt was seen by Dr. Mullins on November 17, 2005, because he was complaining of pain in his lower back.  *Resp.* at ¶ 27.  Hoyt reported no history of a motor vehicle accident or other trauma.  *Id.*  Dr. Mullins noted that Hoyt's straight leg raising test was "absolutely negative."  *Id.*  Dr. Mullins concluded Hoyt had questionable back pain.  *Id.*  Dr. Mullins prescribed Ibuprofen, 600 m.g., twice a day, for four days.  *Id.*

-4-

Hoyt was seen by Dr. Mullins again on November 29th for complaints of back pain. *Resp.* at ¶ 28. Examination revealed a negative straight leg raising test. *Defts' Ex.* 2 at page 9. Hoyt reported that he had been beaten in April. *Id.* Dr. Mullins noted no bruises or contusions on Hoyt's back. *Id.* Dr. Mullins concluded Hoyt had no serious problem with his back. *Id.* He stated he saw no pathology and he prescribed no medicine. *Id.* Hoyt indicates Dr. Mullins stated he was too young to have back problems. *Resp.* at ¶ 28.

Dr. Mullins saw Hoyt on December 14th for complaints that his feet hurt. *Defts' Ex.* 2 at page 10. Upon examination, Dr. Mullins noted no swelling in Hoyt's feet, no erythema, no contusion, and no bruises. *Id.* Dr. Mullins noted Hoyt was no longer voicing complaints of back pain. *Id.* Hoyt told Dr. Mullins that he had to sit down and rub his feet before he got up. *Id.* Dr. Mullins told Hoyt it was probably a good thing to keep doing that. *Id.* Dr. Mullins observed no serious pathology. *Id.* He prescribed Ibuprofen, 600 m.g., twice a day, for four days. *Id.*

Hoyt contends he told Dr. Mullins he was still having back pain. *Resp.* at ¶ 29. Moreover, Hoyt indicates his request for medical attention reflects this. *Id.*

On January 30, 2006, Hoyt submitted a medical request because he was in pain. *Resp.* at ¶ 30. He also submitted a medical request because of an irritating itch of his skin and hair. *Id.* at ¶ 31.

Hoyt was seen by Nurse McDonald on February 1st. *Defts' Ex.* 2 at page 22. According to her notes, she advised Hoyt to use soap every other day since it was causing his skin to itch. *Id.* According to Hoyt, McDonald said there was nothing wrong with him and he should stay out of her office. *Resp.* at ¶ 32.

-5-

On March 10th, Hoyt submitted a medical complaint about dry elbows. *Resp.* at ¶ 33. Hoyt was seen by Nurse McDonald in response to this request. *Id.* at ¶ 34. She noted that Hoyt wanted a copy of his medical records. *Id.*

On April 12th, Hoyt submitted a medical request noting that he was sick and his teeth were bothering him. *Resp.* at ¶ 35. Hoyt was seen by Nurse McDonald that day and she recommended that he gargle with salt water for four days and take Ibuprofen. *Id.* at ¶ 36.

On April 19th, Hoyt submitted a medical request stating that he was really sick, hurting, and felt like throwing up. *Resp.* at ¶ 37. Hoyt was seen by Nurse McDonald on April 21st and he told her he was feeling better. *Id.* at ¶ 38. She prescribed Ibuprofen. *Id.*

On July 11th, Hoyt submitted a grievance stating that he had put in a medical request two and a half weeks ago about an irritation of his skin and pain and had not seen the nurse yet. *Resp.* at ¶ 39. In response, Captain Petray said Hoyt's request would be forwarded to the medical. *Id.*

On July 14th, Hoyt submitted a medical request asking to be on bed rest because he had been throwing up a lot. *Resp.* at ¶ 41. On July 26th, Hoyt was seen by Dr. Mullins because of his complaints of stomach pain. *Id.* at ¶ 42. Dr. Mullins noted Hoyt had acute abdominal pain–etiology uncertain. *Id.* He prescribed Augmentin, Reglan, and a clear liquid diet. *Id.* Hoyt was put on bed rest for the day. *Id.*

Hoyt received the prescribed medication. *Resp.* at ¶ 43. On July 27th, Hoyt asked if he could be taken off the liquid diet. *Id.* at ¶ 44. In response to his request, he was taken off the liquid diet. *Id.* at ¶ 45.

-6-

On August 2nd, Hoyt asked to see the nurse due to "rawness in [his] area from diarrhea." *Resp.* at ¶ 46. Hoyt was seen by Dr. Mullins that day. *Id.* at ¶ 47(A). He examined Hoyt's rectum and did not see any rash or irritation. *Id.* He also noted Hoyt had gained four pounds since he had seen him on July 26th. *Id.* Dr. Mullins concluded Hoyt had a questionable irritation of his skin on the rectum and prescribed Triamcinolone ointment, twice a day, for three days. *Id.* Hoyt received the Triamcinolone ointment. *Id.* at ¶ 47(B).

Hoyt received all medical care Nurse McDonald and Dr. Mullins believed in the exercise of their medical judgment he should receive. *Resp.* at ¶ 48. All decisions regarding his medical care were made by the medical staff at the BCDC. *Id.*

Hoyt was seen by Nurse McDonald and Dr. Mullins on multiple occasions during his incarceration at the BCDC. *Resp.* at ¶ 56. He received all medication prescribed by Nurse McDonald or Dr. Mullins. *Id.* at ¶ 57.

Hoyt intended to sue the defendants in both their individual and official capacities. *Resp.* at ¶ 52. He believes Benton County had a policy or custom that caused him to be denied adequate medical care. *Id.* at ¶ 51. When he was asked to describe the policy, Hoyt indicated the policy required him to see Dr. Mullins and Nurse McDonald and he did not believe they provided adequate medical care. *Id.*

Hoyt maintains Dr. Mullins and Nurse McDonald continually ignored and down played his medical problems. *Resp.* at ¶ 54 & ¶ 55. According to Hoyt, the primary function of both Dr. Mullins and Nurse McDonald is not health care of inmates but loss control and regulating complaints for the BCDC. *Id.*

-7-

With respect to his back problems, Hoyt contends the straight leg raising test was not an adequate test of the back problems. *Resp.* at page 30. He maintains an x-ray was called for. *Id.* Hoyt maintains Dr. Mullins' examination was much too superficial. *Id.* Hoyt maintains Dr. Mullins and Nurse McDonald are not qualified to diagnose and treat every possible symptom and are predisposed to label as imaginative or psychosomatic any thing which is not blindingly obvious or might cost the BCDC. *Id.*

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

-8-

## **Discussion**

Defendants have now moved for summary judgment.  First, defendants argue they are sued in their official capacities only.  As there is no evidence of any custom or policy of Benton County that was a moving force behind any alleged violation of plaintiff's constitutional rights, they contend there is no basis on which they can be held liable under § 1983. Second, defendants contend there was no evidence of deliberate indifference to the plaintiff's serious medical needs.

### ***Official Capacity v. Individual Capacity Claims***

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendants acted under color of state law and that they violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those
> in their official capacities as to the type of conduct that is actionable and as to the

-9-

> type of defense that is available.  *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358,
> 116 L. Ed. 2d 301 (1991).  Claims against individuals in their official capacities
> are equivalent to claims against the entity for which they work; they require proof
> that a policy or custom of the entity violated the plaintiff's rights, and the only
> type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at
> 24-27, 112 S. Ct. at 361-62 (1991).  Personal capacity claims, on the other hand,
> are those which allege personal liability for individual actions by officials in the
> course of their duties; these claims do not require proof of any policy and
> qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25-27, 112 S. Ct.
> at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability.  *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).  *See also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability).  When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only.  *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities.  Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

-10-

At the same time, we are charged with liberally construing pro se complaints.  *See e.g. Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)(requirement that pro se complaints be construed even more liberally than counseled pleadings); *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)(finding pro se petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief").  In responding to the summary judgment motion, Hoyt has noted that he intended to sue the defendants in both their individual and official capacities.  *Resp.* at ¶ 52.  We will therefore consider this to be his motion to amend his complaint.  *See e.g., Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997)(complaint against state officials who were sued in their official capacities was deemed amended to assert personal capacity claims, where plaintiff moved to amend complaint in response to motion for summary judgment).

### Denial of Medical Care

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  In *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006), the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle  v. Gamble*, 429

-11-

U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting  Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).  *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992).  "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86

-12-

F.3d 761, 765 (8th Cir. 1996).   In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the

Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to
> receive a particular or requested course of treatment, and prison doctors remain
> free to exercise their independent medical judgment.  Deliberate indifference may
> be demonstrated by prison guards who intentionally deny or delay access to
> medical care or intentionally interfere with prescribed treatment, or by prison
> doctors who fail to respond to prisoner's serious medical needs.  *See Estelle v.*
> *Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976).  Mere
> negligence or medical malpractice, however, are insufficient to rise to a
> constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239.  *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, we believe there are no genuine issues of material fact as to whether

defendants exhibited deliberate indifference to Hoyt's serious medical needs.  Hoyt was seen on

multiple occasions by medical personnel and received all medical treatment ordered.  Hoyt's

disagreement with the treatment decisions made by Dr. Mullins or Nurse McDonald does not rise

to the level of a constitutional violation.  *See e.g., Estate of Rosenberg v. Crandell*, 56 F.3d 35,

37 (8th Cir. 1995).  With respect to his back condition, Hoyt offers nothing other than his own

opinion that the straight let raising test was an insufficient diagnostic tool and an x-ray was

necessary.  Similarly, Hoyt's complaints that Dr. Mullins' examinations were cursory and that

he failed to take x-rays amount to at most, a negligence, or a medical malpractice cause of action

which does not rise to the level of a constitutional violation.  *Dulany*, 132 F.3d at 1239 (mere

negligence or medical malpractice is insufficient to rise to a constitutional violation).  There is

simply no genuine issue of material fact as to whether the defendants ignored an acute or

escalating condition with respect to Hoyt's health. *See e.g., Beck v. Skon*, 253 F.3d 330, 333 (8th

-13-

Cir. 2001)("Like any other civil litigant [a pro se litigant is] required to respond to defendants' motion with specific factual support for his claims to avoid summary judgment").

"When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment.  To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment ..." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(internal quotation marks and citations omitted).  Hoyt submitted no evidence suggesting any delay in his obtaining treatment had a detrimental effect.  He therefore failed to raise a genuine issue of fact with respect to this claim.

With respect to Petray, there is no evidence he was personally involved making any decisions regarding Hoyt's medical care.  Instead, Petray merely forwarded medical requests and/or grievances regarding medical situations to the medical staff.  *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(respondeat superior liability not permissible under § 1983); *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).  There is simply no basis on which Petray can be held liable.  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

-14-

**Conclusion**

For the reasons stated, I recommend that the plaintiff's complaint be construed as asserting an individual capacity claim against the defendants and that the defendants' motion for summary judgment (Doc. 12) be granted.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of August 2007.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-15-

AO72A
(Rev. 8/82)